# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ST. JOAN ANTIDA HIGH SCHOOL,
INC.,

                     Plaintiff,

v.

MILWAUKEE PUBLIC SCHOOL
DISTRICT,

                     Defendant.

Case No. 17-CV-413-JPS

**ORDER**

## 1.    INTRODUCTION

This is a case about student busing. The defendant, Milwaukee Public School District ("MPS"), provides busing to qualifying public and private school students in the city of Milwaukee. The plaintiff, St. Joan Antida High School ("SJA"), a private school in Milwaukee, contends that MPS' student transportation policy treats MPS public school students differently and more favorably than it treats similarly-situated private school students.

SJA filed its complaint on March 21, 2017, alleging that MPS has violated its rights and the rights of its students under the Equal Protection Clause of the Fourteenth Amendment. (Docket #1). SJA also alleged a claim against MPS under a Wisconsin state law, Wis. Stat. § 121.54, which commands school districts in Wisconsin to transport public and private school students with reasonable uniformity. *Id.*

The parties filed cross motions for summary judgment, and those motions are now fully briefed and ripe for adjudication. (Docket #16-27, 30-

35, 37, 41).[1] For the reasons explained below, MPS' motion for summary judgment will be granted, SJA's motion for summary judgment will be denied, and this action will be dismissed.[2]

## 2.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 3.  FACTUAL BACKGROUND

The parties agree that there are no genuine issues of material fact and that this case can be resolved on summary judgment. *See* (Docket #32, #37,

---

[1]Having received and reviewed six briefs on the merits of the claims in this case, inclusive of responses and replies, the Court finds that oral argument is not necessary to resolve the legal issues before it. SJA's motion for oral argument, (Docket #39), will therefore be denied.

[2]MPS also filed a motion to dismiss alleging improper service, (Docket #7), but has since withdrawn the motion, *see* (Docket #11 at 2 and #13). That motion will be denied as moot.

and #39 at 1).[3] Before turning to the parties' dispute, though, the Court must begin with a primer on the state law and municipal policy that underlie it.

### 3.1 Wisconsin Student Transportation Law

Prior to 1967, Wisconsin did not permit public school districts to provide transportation for children attending parochial or private schools. *Cartwright v. Sharpe*, 162 N.W.2d 5, 8 (Wis. 1968). In 1967, by virtue of the mandate of a state-wide referendum, the Wisconsin constitution was amended to provide that "[n]othing in this constitution shall prohibit the legislature from providing for the safety and welfare of children by providing for the transportation of children to and from any parochial or private school or institution of learning." Wis. Const. art. I, § 23.

Pursuant to authority provided by that constitutional amendment, the Wisconsin legislature amended the state's student transportation law to provide "transportation for students attending private or parochial schools and public schools upon a reasonably uniform basis." *Cartwright*, 162 N.W.2d at 8. Under that law, school boards must provide free transportation to elementary and high school students who reside two or more miles from their school, public or private. Wis. Stat. § 121.54(2); *see also St. John Vianney Sch. v. Bd. of Educ. of Sch. Dist. of Janesville*, 336 N.W.2d 387, 390 (Wis. Ct. App. 1983).

The major exceptions to this law apply to cities. For example, a school board need not provide transportation to students in certain large cities, as defined by the statute, if transportation is otherwise available

---

[3] SJA's response to MPS' proposed findings of fact was untimely filed. (Docket #37). SJA moved the Court to excuse its tardiness, (Docket #36), to which MPS does not object, (Docket #40 at 1). However, MPS asked the Court to allow it to file a reply in support of its proposed findings of fact. (Docket #40 at 1 and #41). Both parties' requests will be granted.

through a common carrier of passengers. Wis. Stat. § 121.54(1). In that case, the city school board may nonetheless elect to provide transportation under the so-called "city option." *Id.* Under the city option, "there shall be reasonable uniformity in the transportation furnished such pupils whether they attend public or private schools." *Id.*

### 3.2    MPS Student Transportation Policy

MPS has exercised the city option, meaning it can determine its own transportation policies, but must provide transportation with reasonable uniformity to students of public and private schools. MPS, through its Board of Directors, has created a policy for student transportation services, set forth in MPS Administrative Policy 4.04 ("Policy 4.04").[4] Policy 4.04, in relevant part, directs that transportation will be provided to Milwaukee-resident students as follows:

**(2)    CONDITIONS OF DISTANCE**

**(a)  To and from Public Schools within the City**
…
3.    If the student is enrolled in grade 9 through grade 12, and the residence is two miles or more from the district school and more than one mile walking distance from public transportation.

**(b) To and from Private Schools Located within the City or Located Not More Than Five Miles beyond the Boundaries of the City, As Measured along the Usually Traveled Route**
…
2.    If the student is enrolled in grade 9 through grade 12, and the residence is two miles or more

---

[4]Administrative Policies of the Milwaukee Public Schools, Administrative Policy 4.04, Student Transportation Services (November 12, 2014), *available at* http://mps.milwaukee.k12.wi.us/MPS-English/OBG/Clerk-Services/MPS-Rules-and-Policies/AdministrativePolicies/Chapter04/Administrative_Policy_04_04.pdf.

from the private school and more than one mile walking distance from public transportation;

3.      If the student resides within the designated attendance area of the private school. (Attendance area is the geographic area designated by the governing body of a private school and approved by the Board as the area from which its students attend. The attendance areas of private schools affiliated with the same religious denomination may not overlap.);

4.      If the private school submits the names, grade levels, and locations of eligible students no later than the third Friday of September; and

5.      According to the transportation schedule prepared by the Milwaukee Public Schools.

MPS Administrative Policy 4.04(2).

       As to the deadline for private schools to submit a roster of students who will require busing for the coming school year, the parties agree that, in practice, the deadline is actually July 1. (Docket #32 at 4-5 and #37 at 9). Only those students on the roster submitted by the private school receive busing if otherwise eligible. MPS does not apply a roster deadline for students attending MPS schools.

       In a subsequent section, the policy prescribes rules for transportation of students who attend MPS schools other than the schools to which they would otherwise be assigned based on their residences (their attendance-district, or "neighborhood," schools) in order to take advantage of programs offered at select MPS schools or to avoid problems such as overcrowding and racial imbalance at their neighborhood schools. *Id.* at 4.04(5). This section provides, in relevant part:

**(5) RACIAL BALANCE, MODERNIZATION, OVERLOAD, AND LACK OF FACILITY**

**(a) City-Wide Schools**

...

2.    Secondary. Transportation service shall be provided to the public secondary school students whose residences are two miles or more walking distance from assigned city-wide schools.

**(b) Attendance-Area Schools**

...

2.    Secondary. Transportation service shall be provided to those public secondary school students who are assigned to schools other than their attendance-area schools and whose residences are two miles or more walking distance from the assigned schools.

MPS Administrative Policy 4.04(5).

MPS city-wide schools accept students from, as the name suggests, the entire city of Milwaukee. This is in contrast to MPS neighborhood schools, of which there is one for each attendance area within the city. MPS city-wide schools have special programs or areas of study such as the arts, International Baccalaureate, Montessori, language immersion, or gifted and talented programs. MPS does not offer these special programs in all of its high schools.

### 3.3    SJA's Application to MPS for Busing

SJA is an independent, private, female-only high school in Milwaukee. It provides its students, a majority of whom are racial minorities, an intellectually challenging college-preparatory International Baccalaureate program of study. SJA's approved attendance area, for the

purposes of student transportation under Policy 4.04, is city-wide. For the 2016-17 school year, its enrollment was 145 students.

SJA believes that because its attendance area is city-wide, its students should fall under Section 4.04(5)(a), which, by its terms, applies only to city-wide public school students. That section provides a more generous busing scheme than section 4.04(2)(b), which applies to private school students. Section 4.04(5)(a) provides busing for students who live more than two miles from school, while section 4.04(2)(b) provides busing for students if they live more than two miles from school *and* more than one mile from public transportation. Additionally, section 4.04(2)(b) includes a requirement that the private school submit a roster of eligible students to MPS before the start of the school year, whereas section 4.04(5)(a)—and all other sections applying to public schools—does not.

On May 14, 2016, prior to the 2016-17 school year, SJA applied to MPS for transportation for SJA students it believed qualified for that benefit under MPS' transportation policy. SJA's initial roster included 62 of the 68 students involved in this case.[5] SJA submitted an updated roster on September 29, 2016 that included all 68 students. Those students have residences that are within Milwaukee and more than two miles walking distance from SJA, but not more than one mile walking distance from public transportation.

MPS denied SJA's request. Of the 68 students, 61 were denied transportation under section 4.04(2)(b) because they lived within one mile

---

[5]SJA's complaint references 70 students, but SJA states that it learned during discovery that two of those students were properly denied busing based on the locations of their residences. (Docket #17 at 3). SJA no longer disputes MPS' decision with respect to those two students. *Id.*

of a public bus stop. Six students were denied transportation under the same section because they were not on SJA's roster by July 1. One student was denied transportation under that section because MPS contended the student lived within two miles of SJA. SJA states that the student lives 2.1 miles from SJA, but the parties agree that even if SJA is correct, the student would have been denied transportation because the student lives within one mile of a public bus stop. SJA arranged and paid for transportation for the 2016-17 school year for those 68 students, and the students' parents assigned their transportation rights and benefits to SJA to facilitate this lawsuit.

On March 21, 2017, SJA filed this action against MPS on its own behalf and on behalf of the 68 students. SJA claims it has been harmed because MPS' transportation policy burdens its recruitment efforts and because it was forced to provide transportation to its students, who should have qualified for MPS busing, at a cost of $108,200.00 for the 2016-17 school year. SJA alleges that the 68 students and their families have been harmed because SJA was forced to use a portion of the money they pay in tuition to provide transportation rather than other educational programming.

4.    **ANALYSIS**

SJA brings two claims in this case. The first is a civil rights claim under 42 U.S.C. § 1983 for MPS' violation of SJA's and its students' Fourteenth Amendment rights to equal protection of law. The second is a state law claim under Wis. Stat. § 121.54 for MPS' violation of its statutory obligation to treat SJA students with "reasonable uniformity" as compared to public school students in Milwaukee with respect to transportation to school. Both of these claims share two bases: the disparate busing scheme and the private-school-only roster requirement.

### 4.1    Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XVI, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)).

The Equal Protection Clause does not itself provide a private cause of action. Rather, Section 1983 "provides a cause of action for all citizens injured by an abridgment" of the Equal Protection Clause. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 119–20 (1992). Section 1983 establishes a cause of action against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The parties do not dispute that MPS is a state actor for the purposes of SJA's Section 1983 claim. The dispute is over the alleged constitutional deprivation.

On that question, the parties disagree at every turn. First, they disagree as to which type of equal protection claim SJA has alleged—a class-of-one claim or a claim based on a legislative classification. Second, they disagree on the appropriate level of scrutiny under which the Court is to review SJA's claim. Third, they disagree as to whether MPS has a rational basis for providing more generous busing to some public school students than it provides to private school students, and for requiring a roster from private schools but not from public schools. Each issue is addressed below.

### 4.1.1  MPS' Legislative Classification

The first issue the Court must resolve is whether SJA's equal protection claim is, as SJA says, based on a legislative classification or if it is instead, as MPS says, a "class of one" claim. MPS contends that because SJA's claim is of the class of one variety and because SJA has not identified a similarly situated class of persons that is treated more favorably under Policy 4.04, SJA's claim fails at the outset. If that were true, the Court need not continue its equal protection analysis.

In an equal protection case where the plaintiff "challenges a statute or ordinance that by its terms imposes regulatory burdens on a specific class of persons . . ., there is no need to identify a comparator; the classification appears in the text of the policy itself." *Monarch Beverage Co. v. Cook*, 861 F.3d 678, 682 (7th Cir. 2017). Plaintiffs challenging a legislative classification allege that they have been "arbitrarily classified as members of an 'identifiable group.'" *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (citation omitted).

In a class of one equal protection case, "the plaintiff doesn't challenge a statute or ordinance but argues instead that a public official (or group of officials) has treated him differently than other persons similarly situated for an illegitimate or irrational reason." *Monarch Beverage Co.*, 861 F.3d at 682. If a class-of-one plaintiff "can't identify a similarly situated person or group for comparison purposes, it's normally unnecessary to take the analysis any further; the claim simply fails." *Id.* (citation omitted). That is so because the equal protection guarantee is "concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Id.* (quoting *Engquist*, 553 U.S. at 601). In a class-of-one equal protection case, the classification drawn by the challenged governmental

action might not be obvious, and therefore "[i]dentifying a similarly situated comparator is a way to show that disparate treatment in fact has occurred and sets 'a clear standard against which departures, even for a single plaintiff, [can] be readily assessed.'" *Id.* (quoting *Engquist*, 553 U.S. at 602).

The Court agrees with SJA that it presents a legislative classification equal protection claim. Policy 4.04 draws a distinction between public school students attending their neighborhood schools, private school students attending any school, and public school students attending city-wide schools.[6] SJA students are members of the class of private school students that is treated differently than public city-wide school students with respect to busing and all public school students with respect to the roster deadline rule.

MPS' comparison to *Racine Charter One, Inc. v. Racine Unified School District*, 424 F.3d 677 (7th Cir. 2005), is unavailing. In that case, Racine Charter One ("Charter One"), an independent public charter school, brought an equal protection claim against the Racine Unified School District ("RUSD"), a school district in southeastern Wisconsin, based on the school district's refusal to provide busing for Charter One students. *Id.* at 680. RUSD's written transportation policy provided transportation for all public, private, and parochial school students so long as they met certain criteria. *Id.* at 679. The policy did not distinguish between charter schools and other schools; it did not even mention charter schools. Further, the

---

[6]Policy 4.04 classifies students in many other ways that are not relevant here; for example, students who attend neighborhood schools other than their assigned neighborhood schools are classified for the purpose of applying a specific transportation rule to them, *see* Policy 4.04(5)(b).

Wisconsin law mandating busing by school districts of all private and public school students—the same state law at issue in this case—is silent as to charter schools. *Id.* (citing Wis. Stat. § 121.54).

Charter One could not pursue a claim that it was burdened by a legislative classification because the school district's policy contained no such classification. Instead, the district court found, and the Seventh Circuit agreed, that Charter One's claim was properly construed as a class of one claim: that local government officials within the RUSD denied the school and its students the benefit of busing otherwise provided to all others similarly situated without a rational basis for the distinction. *Id.* at 680. Charter One had the threshold burden, then, of showing that its students were in fact similarly situated to those students within the RUSD who did receive busing. *Id.*

In contrast, SJA belongs to an identifiable group that is specifically classified in Policy 4.04(2) as "private schools located within the city or located not more than five miles beyond the boundaries of the city, as measured along the usually traveled route." Further, whereas Section 121.54 is silent as to school districts' obligations to charter schools, the law obliges school districts to provide transportation to students attending private schools like SJA.

MPS takes pains to note that the policy does not specifically classify "private city-wide schools," and, therefore, SJA must be a class of one for purposes of comparing itself to pubic city-wide schools. But the fact that the policy does not mention private city-wide schools is exactly SJA's point. Among all private and public school students MPS is legally required to transport, the policy creates a favored class of public school students who

are afforded a more generous transportation option as compared to private school students (and public neighborhood school students, for that matter).

As to the roster submission requirement, the classifications within the policy are even clearer. All private schools, and no public schools, are required to comply with this requirement. SJA's challenge to this part of the policy attacks the overt distinction drawn between classes of private and public school students.

### 4.1.2 Appropriate Level of Scrutiny

The Court must next determine under which level of scrutiny to review the challenged policy. SJA gestured, in a footnote in its opening brief supporting its motion for summary judgment, at the application of strict scrutiny, and then argued more forcefully in favor of that standard in its response to MPS' motion. MPS argues that rational basis review is appropriate.

Strict scrutiny of a legislative classification is appropriate "when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Segovia v. United States*, 880 F.3d 384, 390 (7th Cir. 2018) (quoting *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (per curiam)). Under strict scrutiny, the challenged law is upheld only if it is "narrowly tailored" to achieve a "compelling" government interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

In contrast, a legislative classification that does not proceed along suspect lines or burden a fundamental right need only satisfy the less-stringent "rational-basis review[.]" *Segovia*, 880 F.3d at 390 (citing *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012)). This requires that the classification merely bear a "rational relationship" to some "legitimate

government purpose." *Id*. Under rational basis review, a legislative classification must be upheld against an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Armour,* 566 U.S. at 681 (quotation omitted). "Further, because the classification is presumed constitutional, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (quotation omitted). The Supreme Court has described rational basis review as "a paradigm of judicial restraint." *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314 (1993).

SJA demands strict scrutiny because it believes a fundamental right is being burdened here. The Supreme Court has held that, at least for purposes of an equal protection claim, education is not a fundamental right. *Plyler v. Doe*, 457 U.S. 202, 223 (1982). So, SJA frames the relevant fundamental right in a slightly different way. SJA argues that Policy 4.04 burdens the fundamental right of parents to choose private education for their children. In support of this argument, SJA cites to a nearly century-old case in which the Supreme Court held that an Oregon statute compelling public school attendance for children from age eight to age sixteen violated parents' Fourteenth Amendment substantive due process rights. *Pierce v. Soc'y of Sisters,* 268 U.S. 510 (1925). The Court found that "[t]he inevitable practical result of enforcing the Act under consideration would be destruction of appellees' primary schools, and perhaps all other private primary schools for normal children within the State of Oregon." *Id.* at 534. The Court thus concluded that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." *Id.* at 534–35.

The Seventh Circuit faced a similar issue in *Griffin High School v. Illinois High School Association,* 822 F.2d 671, 675 (7th Cir. 1987), and declined to apply strict scrutiny. There, a private religious high school challenged, on equal protection grounds, a high school association by-law that imposed a one-year bar on interscholastic athletic participation for all students who transferred schools, except for those students who transferred from a private to a public school. *Id.* at 673-74. The school argued that the transfer rule would weaken private school athletic teams, causing parents to send their children to public schools instead, which would lead to the destruction of private schools in the state, thereby impairing parents' ability to send their children to private schools. *Id.* at 675. The Seventh Circuit made short work of this argument, concluding that "[t]his chain of causation is too attenuated and speculative to support the conclusion that the new transfer policy unreasonably interferes with the freedom of parents to direct their children's upbringing." *Id.* The court went on to apply rational basis review to the school's claim. *Id.*

The same is true here. Any causal connection between the destruction of private schools and MPS' allegedly discriminatory policy is attenuated and speculative. The *Pierce* Court's concern for the inevitable destruction of private schools resulting from enforcement of the challenged policy is not present in this case. Further, although it is true that parents have a fundamental right "to make decisions concerning the care, custody, and control of their children," *Troxel v. Granville,* 530 U.S. 57, 66 (2000), SJA has pointed to no case law indicating that a school district's refusal to provide subsidized busing to certain private school students, or its requirement that private school students sign up for busing by a certain date, unreasonably interferes with the freedom of parents to direct their

children's upbringing. *Cf. Rust v. Sullivan*, 500 U.S. 173, 201 (1991) (government has no duty to subsidize fundamental rights). In the absence of such precedent, the Court finds that the appropriate level of constitutional review for Policy 4.04 is the rational basis test, not strict scrutiny.

### 4.1.3   Rational Basis Review

The Court's final task in resolving SJA's equal protection claim is to determine whether the classifications in Policy 4.04 survive rational basis review. As noted above, rational basis review of a challenged law will result in invalidation only if there is no rational relationship between the law's disparity of treatment and some legitimate government purpose. *Armour*, 566 U.S. at 680; *Segovia*, 880 F.3d at 390.

### 4.1.3.1 One Mile From a Bus Stop

Under Policy 4.04, private school students are disqualified from busing if they live within one mile of a bus stop, but public school students who attend MPS city-wide schools and public school students who attend an MPS neighborhood school other than their assigned neighborhood school are not.

According to MPS, the legitimate purpose behind this portion of the policy is "providing equal access to the highest quality education." (Docket #23 at 14-19). Its decision to allow students from all over the city to attend specialized schools and to allow some students to attend neighborhood schools other than their own, MPS argues, is rationally related to that purpose in light of the overcrowding and racial imbalance at some MPS neighborhood schools and MPS' inability to offer special programming at all of its schools. *Id*.

This reasoning certainly supports MPS' attendance policy for its own schools, but it is a red herring here. That MPS was rationally motivated in allowing students to access special programming and move from overcrowded or racially imbalanced neighborhood schools is both true and irrelevant. The relevant question is whether MPS' decision to provide preferential busing to those students is rationally related to some legitimate purpose. As to *that* question, MPS makes two points.

First, MPS states that "when a pupil has to go to a school other than his or her designated attendance area school, it is not fair to require that pupil to either walk the extended distance or navigate public transportation for that distance, which may mean many transfers and far more stops along the way than a pupil transportation service." (Docket #23 at 19). From this the Court discerns one legitimate purpose for MPS' provision of expanded busing to city-wide school students: convenient and safe student transportation.

But this does not answer whether MPS' disparity of treatment between public city-wide school students and private school students is rationally related to that purpose. As SJA points out, a private school student attending a school with a city-wide attendance area faces the same challenges in her commute as does a student attending a public city-wide school. (Docket #34 at 3). And there is nothing in the record to suggest that students attending MPS city-wide schools face longer or more dangerous commutes than students who attend private city-wide schools. Thus, the hazards of a long commute do not provide a rational basis for MPS to give expanded busing to certain of its own students but not to students who attend a city-wide private school.

Second, MPS states that it would be prohibitively expensive to extend the expanded busing option to students who attend private city-wide schools. MPS' student transportation costs already exceed the amount it receives in state aid for transportation, and avoiding the additional cost (even if small in relation to MPS' overall transportation budget) serves the purpose of preserving the district's resources.

*Racine Charter One* controls here. As discussed earlier, that case also involved a school district's decision not to provide busing to students who may attend a local school. The court found that the "unique and additional costs that [the school district] would incur were it to provide [busing] to Charter One" was a rational basis for its refusal to bus the charter school students. *Racine Charter One*, 424 F.3d at 685–86. Explaining this finding, the court noted that to accommodate Charter One students,

> [the school district] would almost certainly be forced to alter its current busing routes. Some buses service more than one school, requiring the accommodation of not only the various, specific addresses of each passenger (both current riders and each added Charter One student), but also the coordination of potentially different start and end times at each school serviced. Such alterations would come with appreciable costs, be they the creation of new routes, the addition of more buses, or the elongation of bus routes requiring earlier pick-ups and later drop-offs. And while the record does not allow us to quantify these additional costs to [the school district] with any degree of certainty, we are confident that they are substantial enough to provide a rational basis for [the school district's] refusal to extend the busing benefit to Charter One students.

*Id.* at 686. The court went on to compare the size of Charter One with the size of the Racine school district, noting the latter is much larger and has many more challenges to manage. *Id.* at 686-87. Finally, the court noted that

Charter One could appeal to its benefactors for transportation funding whereas the school district was at the mercy of the taxpayers. *Id.* at 687.

All of these cost-related concerns may also be reasonably said to apply in this case. Eliminating the bus stop rule for private city-wide schools would almost certainly require MPS to alter is current busing routes, as it would be transporting more and different students than it currently buses and for longer distances. MPS would also likely have to coordinate different start and end times for the schools serviced. True, it already does this for any private school students it already buses, but with more private school students qualifying for busing, some bus routes that previously only serviced public schools might have to service private schools with potentially different schedules.

These are hypothetical costs not presented with any detail by MPS, much less based on data, but the Court is bound to discern any and all rational bases for a law's disparate treatment when conducting rational basis review. *See Armour*, 566 U.S. at 681. And while these costs might not be colossal, indeed possibly less than the $108,200 SJA spent for the 2016-17 school year, this Court cannot say that they are appreciably less or different than the costs the *Racine Charter One* court found sufficient to justify denial of busing.[7]

_____

[7]That being said, the *Racine Charter One* court's analysis of cost appears at odds with the reasoning in some Supreme Court and Seventh Circuit case law regarding cost as a rational basis. *See, e.g., Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71 (1988); *Irizarry v. Bd. of Educ. of City of Chicago*, 251 F.3d 604 (7th Cir. 2001). In those cases, the courts emphasized that only costs that are unique to a certain class can rationally justify singling out that class for disparate treatment.

In *Bankers Life*, the Supreme Court considered an equal protection claim lodged against Mississippi's appellate penalty statute, which aimed to discourage frivolous appeals by requiring unsuccessful appellants from money judgments

---

(but not appellants from other kinds of judgments) to pay an additional assessment of 15% of the judgment. *Id.* at 80. The Court found this differential treatment permissible because calculating the penalty for money judgment appellants would be simple, but doing the same for non-money judgments would require "erect[ing] a fixed bond that bore no relation to the value of the underlying suit" or "set[ting] appropriate penalties in each case using some kind of individualized procedure," all of which would "impose a considerable cost in judicial resources, exactly what the statute aims to avoid." *Id.* at 83–84.

The Seventh Circuit followed similar logic in *Irizarry.* In that case, the plaintiff challenged a city board of education policy that extended spousal health benefits to domestic partners of its employees, but only if the partner was of the same sex as the employee. *Id.* at 606. The court found that cost was a rational basis for providing the benefit to homosexual couples but not unmarried heterosexual couples. *Id.* at 610. It was easier for the board to determine whether a claimant was married to an employee than to determine whether the claimant satisfied the multiple criteria for domestic partnership, and processing benefits for married couples required less administrative cost. Therefore, the benefit plan was rationally tailored to reward heterosexual couples who chose to marry. *Id.* at 610.

In *Racine Charter One*, there is no indication that Charter One students were somehow more costly to transport than other students the district bused. Judge Cudahy pointed this out in a concurring opinion, explaining that "[i]t is not rational to treat equally expensive or equally at-risk students differently based solely on their school affiliation. Indeed if [the school district's] cost-based arguments here can succeed, any government official could deny service to any individual, regardless of the dictates of government policy, based solely on the proposition that serving one additional person would cost more than not serving him or her." *Racine Charter One*, 424 F.3d at 688–89 (Cudahy, J., concurring).

The same might be said of the SJA students in this case; there would be an additional cost to bus them, certainly, but not necessarily a unique cost, apart from whatever administrative cost MPS would incur to determine which private schools have city-wide attendance areas. Because *Racine Charter One* is controlling precedent, which applies the Supreme Court's rational basis jurisprudence to facts very similar to those here, this Court will not depart from its majority holding. *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (to depart from appellate precedent, the district court must be "powerfully convinced" that the higher court would overrule its previous decision "at the first available opportunity"). Here, as in *Racine Charter One*, the cost of busing an additional class of students is a rational justification for the school district's policy not to bus them.

### 4.1.3.2 Roster Submission Deadline

MPS also has a rational basis for requiring private schools to submit a roster of students who desire busing for the coming school year but not requiring the same from public schools.

MPS reports that the required roster provides MPS with relevant information concerning which private school students are eligible for transportation and allows MPS to make provisions for such transportation. Once MPS receives the roster, MPS staff members compare the information therein to its own information to ensure no student appears on both a private school and public school enrollment log. MPS staff members then use the addresses listed in the roster to determine which private school students are eligible for busing based on their distance from school and from the nearest bus stop. MPS does not need a roster for its own students because MPS has immediate access to the names and addresses of its own students.

SJA agrees that MPS needs a student roster from private schools so MPS knows who to bus and from where. However, MPS needs a roster of sorts for its own students at some point too, SJA counters, and MPS' imposition of a cutoff deadline for private school rosters and not for public school rosters is arbitrary and irrational. According to SJA, if MPS can provide busing for latecomers to MPS, it should provide busing to latecomers to private schools as well.

MPS' decision to impose a roster submission deadline for private schools and not public schools finds rational support in administrative concerns. The rosters are necessary because, without them, MPS would have no information about private school students who need busing. Indeed, MPS knows nothing about what happens at private schools like SJA

unless those schools decide to share information. Given that MPS must process the roster information once received, it is rational for MPS to impose a roster submission deadline that allows time for processing before the school year begins. As for latecomers, the administrative tasks associated with providing busing for students enrolling late in MPS schools is presumably less than for students enrolling late at private schools, because MPS knows about its latecomers the moment they enroll.

A legislative policy need not be perfectly efficient to pass muster under the rational basis test. It "may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315. MPS' roster deadline rule comes before this Court with a presumption of validity, *id.* at 314, and SJA has not shown that there is no "reasonably conceivable state of facts that could provide a rational basis" for it. *Id.* at 313. MPS' representations about the logistics associated with arranging busing for private school students provide a rational basis for selectively imposing a roster deadline.

### 4.2    State Law Claim

In addition to its equal protection claim, SJA also brings a state law claim against MPS under Section 121.54. As noted above, that law obligates MPS to provide transportation to students, whether they attend public or private schools, with "reasonable uniformity." Wis. Stat. § 121.54(1)(b).

It is clear that this law is the engine driving this litigation. Indeed, SJA asserts throughout its equal protection briefing that because MPS has a statutory obligation to transport public and private school students with reasonable uniformity, MPS acted irrationally in expanding busing for public city-wide school students and not private city-wide school students.

But whether MPS buses students in non-uniform way and whether that non-uniformity is rational are two different questions.

The latter question has been answered above. The former has not, but it is a question best suited for the state courts of Wisconsin. The federal supplemental jurisdiction statute permits a district court to decline to exercise supplemental jurisdiction over a state law claim in certain instances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."). Having disposed of SJA's only claim arising under federal law, the wiser exercise of discretion in such matters is to decline to exercise supplemental jurisdiction over the remaining state law claim.

**5.     CONCLUSION**

For the reasons stated above, the record and the relevant authorities oblige the Court to deny SJA's motion for summary judgment, grant summary judgment in favor of MPS, and dismiss this case in its entirety.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #7) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file an untimely response to Defendant's proposed findings of fact (Docket #36) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for oral argument (Docket #39) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #16) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Docket #22) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's constitutional claim (Docket #1 at 3) be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's state law claim (Docket #1 at 7) be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2018.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge